J-S55013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.J.L.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.C.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 700 MDA 2017 |

Appeal from the Decree Entered March 23, 2017
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s):  2342-2016

BEFORE:   DUBOW, J., RANSOM, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                **FILED SEPTEMBER 25, 2017**

Appellant, T.C.B., ("Mother"), appeals from the decree involuntarily terminating her parental rights to L.J.L.C. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).  We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Mother and A.L.C. ("Father") are the parents of Child who was born in August 2015.  They were never married.  Child was born suffering from opioid withdrawal, and a referral was made to the Lancaster County Children and Youth Social Service Agency ("Agency") with information that indicated Mother was using drugs, had unstable mental health, and that there was domestic violence occurring between Mother and Father.  More specifically,

---

[*] Retired Senior Judge assigned to the Superior Court.

Mother tested positive for opioids a month before Child's birth and Mother and Father engaged in a number of arguments while at the hospital for Child's birth.

The Agency opened an assessment of the family and made repeated attempts to meet with the parents.[1]  On one occasion, Mother left the hospital before a visit and did not return for almost an hour.  When the parents later learned that Child would be transferred to a neonatal intensive care unit ("NICU"), Mother reacted violently.  She threw items in her hospital room and slammed her hospital bed against the wall.  The Agency made three unsuccessful attempts to speak with Mother by telephone.

Mother was discharged on August 30, 2015, but Child remained in the NICU.  Mother's contact with Child from the time of her discharge until Child's discharge was sporadic, including five days in September when she had no contact with him.  In addition, Mother's contacts with Child were monitored due to the ongoing domestic violence concerns, as well as the quality of care Mother provided Child.  More specifically, on two occasions Mother declined to feed Child, and woke him although instructed not to do so.

---

[1] The Agency first became involved with Mother in 2008 after similar allegations were made involving an older son she had had with a different father.  After the child's safety was assured the reports were closed.  That child is currently living with his father.

Because of these ongoing concerns, Child was discharged, on October 24, 2015, to the custody of the Agency. On November 9, 2015, Child was adjudicated dependent, and placed in a resource home where he has remained. The approved child permanency plan included a primary goal of reunification, and a concurrent goal of adoption. Both parents were provided with goals under the plan. Mother's plan included goals regarding her mental health, drug abuse, domestic violence, parenting, financial stability, and safe housing.

Thereafter, permanency review hearings were held regarding Mother's progress on her goals. On November 7, 2016, the Agency filed petitions to terminate ("TPR Petition") both Mother's and Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[2] On December 5, 2016 the Orphans' Court held a permanency review hearing. At that time, the court heard testimony from the Agency's caseworker assigned to the family regarding Mother's progress toward her goals, and from the court-appointed special advocate ("CASA") for Child. At the end of the hearing, the court concluded that Mother made minimal progress on her plan, and that legal and physical custody of Child would remain with the Agency.

---

[2] Father voluntarily relinquished his parental rights on March 23, 2017.

The Orphans' Court held an evidentiary hearing regarding the TPR petition on March 6, 2017. The caseworker assigned to the family, and a caseworker who observed Mother's visitations with Child, testified for the Agency. The court also heard an update from Child's CASA in regard to Child's current status within the resource home. Although Mother did not present any testimony, her counsel did inform the court that the parties reached a stipulation regarding one of several unsuccessful discharge reports from mental health treatment which had been sent in error. *See* N.T., 3/6/17, at 33-34. Following the conclusion of this testimony the Orphans' Court took the matter under advisement.

By opinion and decree entered on March 23, 2017, the Orphans' Court terminated Mother's parental rights pursuant to 23 Pa.C.S. §2511(a)(1),(2), (5), (8), and (b). This timely appeal by Mother follows.

**ISSUES ON APPEAL**

Mother raises the following issues on appeal:

I. Did the [Orphans' Court] err and abuse its discretion in terminating the parental rights of Mother by failing to give proper weight to Mother's efforts to complete the reunification plan?

II. Did the [Orphans' Court] err and abuse its discretion in terminating the parental rights of Mother by failing to give proper weight to the relationship and bond between Mother and [Child]?

Mother's Brief at 7.

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, "merely because the record would support a different result." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citation omitted).

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *Id*. The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We

have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

**Termination Pursuant to 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

a) The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*Id.*

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental

- 7 -

responsibilities while others provide the child with her physical and emotional needs." *Id.*

In the instant case, the Orphans' Court properly concluded that the Agency met the requirements of Section 2511(a)(1). The Orphan's Court found that, in the relevant period prior to the Agency filing the TPR petition, indeed for the majority of Child's young life, Mother's progress towards her goals has been minimal. The court explained:

> At the time of this writing, [Child] has been in placement for the last 18 months of his entire 20 months of life, having spent the first two months in the NICU. This Court is concerned that forcing [Child] to remain in the uncertainty of placement, after almost two years already in placement, while continuing to wait for Mother to change, will be harmful to him. The requirements of 23 Pa.C.S. §2511(a) . . . have been met.
>
> ***
>
> Mother's efforts have been minimal. In 18 months, Mother has not been successfully discharged from mental health, drug and alcohol, or domestic violence treatment, she had not begun or completed parenting training,[3] and has never secured stable income or suitable housing. Arguably, the only goal that Mother has made any progress on is her irregular attendance at weekly visitation.
>
> ***
>
> Here, Mother's continued inability to care for [Child] or to complete permanency plan goals for reunification supports the termination decision of the Orphans' Court.

_____

[3] The record indicates that due to Mother's non-compliance, the drug and alcohol treatment team never cleared her to begin parenting classes. *See* N.T., 12/5/16, at 11-12.

This Court cannot gamble with the safety and welfare of [Child]. Mother has had ample opportunities to demonstrate her ability to be an acceptable parent but has failed to do so.

Orphans' Court Opinion, 3/23/17, at 11-13.

Mother summarizes her argument with regard to the Orphans' Court conclusion as follows:

The [Orphans' Court] erred and abused its discretion by failing to give appropriate weight to Mother's efforts to complete the plan for reunification, including evidence that she was in counseling for mental health and domestic violence; was addressing her drug addiction through methadone treatment; she had secured employment; the visits between Mother and [Child] had improved; and there was evidence of a bond and positive relationship between Mother and [Child].

Mother's Brief at 11. According to Mother, "she had made progress on the Plan and could have completed it if the [Orphans' Court] had given her more time. *Id.* at 9.

Our review of the record refutes Mother's claims. We find that her arguments focus on the credibility of the witnesses, a determination that we cannot disturb on appeal. *In re M.G.*, *supra*. Although Mother characterizes portions of the testimony of the Agency's witnesses as demonstrating more than minimal progress, and again notes the stipulation entered with regard to an error in one report, the weight accorded the totality of the testimony presented was in the exclusive province of the Orphans' Court as fact finder. *Id.* In addition, although there was evidence that most recently Mother's visits with Child have improved and she finally

completed a psychiatric evaluation, "the court shall not consider any efforts by the parent to remedy the conditions described [in subsection (a)(1)] which are first initiated subsequent to the giving of the notice of the filing of the [TPR] petition." 23 Pa.C.S. § 2511(b).

Accordingly, the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), and we need not consider the other subsections under Section 2511(a). **B.L.W.**, **supra**.

**Termination Pursuant to Section 2511(b)**

We also agree with the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." **In re: Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the orphans' court must also discern the nature and status of the parent-

child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In this case, the Orphan's Court found that Mother does not share a close bond with Child. Rather, a beneficial bond exists between Child and his resource parents, who have provided for Child's daily needs for the majority of his life. The court explained:

> The Court does not see a bond between Mother and [Child] that is sufficient to prevent the termination of Mother's parental rights. In truth, [Child] is bonded with his resource parents and they are the only parents and family that he has known since being discharged from the NICU when he was six weeks old. The CASA's November 20, 2016, Report for instance, noted that [Child] could not be comforted by Mother[] after a minor injury, and that only his resource mother was able to quiet him. [Child] deserves the certainty of remaining with parents he loves and is bonded to, and does not deserve a Mother who is unwilling to care for him in a healthy and appropriate manner[.]

Orphan's Court Opinion, 3/23/17, at 13 (citation omitted).

Once again, the credibility of the witness's testimony, and the weight to be given it, are matters exclusively within the province of the Orphans' Court as fact finder. *In re M.G.*, *supra*. Thus, Mother's claim fails.

**CONCLUSION**

In sum, our review of the record supports the Orphans' Court's determination that the Agency met its statutory burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b).  Accordingly, we affirm.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/25/2017